## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| Ohio Coal Association, Kentucky Coal Association, National Mining Association, National Stone, Sand, and Gravel Association, and Portland Cement Association, | * * * * * * | Case No. |
| Plaintiffs, | * * | Judge |
| v. | * * | |
| Thomas E. Perez, Secretary of Labor, and Mine Safety and Health Administration, | * * * | |
| Defendants. | * * * | |

## COMPLAINT

Plaintiffs, the Ohio Coal Association, the Kentucky Coal Association, the National Mining Association, the National Stone, Sand, and Gravel Association, and the Portland Cement Association (collectively, "Plaintiffs"), for their Complaint against defendants Thomas E. Perez, Secretary of Labor (the "Secretary"), and the Mine Safety and Health Administration (collectively, "Defendants"), allege as follows:

### NATURE OF ACTION

1.     Plaintiffs are trade associations which represent coal producers; miners; mining companies; stone, sand and gravel producers; cement producers; and equipment manufacturers that supply mining-related industries.  Plaintiffs' members are regulated by the Federal Mine Safety and Health Act of 1977, as amended, 30 U.S.C. § 801, *et seq.* (the "Mine Act"), as enforced by the Mine Safety and Health Administration ("MSHA"), an agency within the United States Department of Labor.

2. Plaintiffs bring this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"); the Fifth Amendment to the United States Constitution; the Mine Act; and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Defendants have unlawfully promulgated a regulation entitled "Pattern of Violations Final Rule" at 78 Fed. Reg. 5056 (Jan. 23, 2013) (the "POV II Rule"), and Plaintiffs ask this Court to declare the POV II Rule unlawful and to vacate it.

3. As explained more fully below, in promulgating the POV II Rule, Defendants deprived Plaintiffs of adequate notice of and opportunity to comment on critical aspects of the regulation, exceeded their statutory authority under the Mine Act, engaged in arbitrary and capricious rulemaking as defined by the APA, and violated the Plaintiffs' procedural due process rights guaranteed under the Fifth Amendment.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely the Mine Act and the APA, as well as under the United States Constitution.

5. This action is authorized by 28 U.S.C. §§ 2201–2202 and 5 U.S.C. § 701, *et seq.* Defendants' improper promulgation of the POV II Rule legally wronged and aggrieved Plaintiffs and their member companies.  This is a case of actual controversy that requires vacating the rule subject to review, and/or a declaration with respect to the invalidity of the POV II Rule as alleged in this Complaint.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(C) because Plaintiff Ohio Coal Association resides in this district, as do member companies of the other Plaintiff associations.

7.      As held by the United States Court of Appeals for the Sixth Circuit, this is not an action for review of a "mandatory health and safety standard" and thus not subject to initial review in a U.S. circuit court of appeals under § 811(d) of the Mine Act.  *Nat'l Mining Ass'n v. Sec'y of Labor*, Nos. 13-3324/3325, 763 F.3d 672 (6th Cir. 2014).  Instead, this is an action for review of a regulation issued under, but in violation of, the Mine Act and the APA.

8.      There is no impending Mine Act enforcement action against Plaintiffs, and this action does not involve a Mine Act citation, penalty, or order.

9.      This action is wholly collateral to the statutory procedures prescribing review of MSHA enforcement actions by the Federal Mine Safety and Health Review Commission (the "Commission").  30 U.S.C. §§ 815 and 823.

10.      Plaintiffs' APA, statutory, and constitutional claims made herein are outside the Commission's jurisdiction and expertise.

11.      This Court has jurisdiction over Plaintiffs' claims as a federal question pursuant to the APA; under the Fifth Amendment to the United States Constitution; under the Mine Act; under the Declaratory Judgment Act, 28 U.S.C. § 2201; and because a finding of preclusion would foreclose all meaningful judicial review.

## THE PARTIES

12.      Plaintiff Ohio Coal Association ("OCA") is a trade association that represents the interests of Ohio's underground and surface coal producers.  OCA is headquartered in Columbus, Ohio.

13.      Plaintiff Kentucky Coal Association ("KCA") is a trade association that represents the interests of Kentucky's underground and surface coal producers.  KCA is located in Lexington, Kentucky, and has member companies that operate in Ohio.

14.     Plaintiff National Mining Association ("NMA") is a national trade association that represents corporations and organizations involved in various aspects of mining.  NMA is headquartered in Washington, D.C. and has member companies that are based and operate in Ohio.

15.     Plaintiff National Stone, Sand and Gravel Association ("NSSGA") is a national trade association that represents stone, sand and gravel producers.  NSSGA is headquartered in Alexandria, Virginia and has member companies that are based and operate in Ohio.

16.     Plaintiff Portland Cement Association ("PCA") is a national trade association that represents cement manufacturers.  PCA is headquartered in Washington, D.C. and has member companies that operate in Ohio.

17.     Defendant Thomas E. Perez is the U.S. Secretary of Labor and is primarily responsible for the execution and enforcement of the Mine Act and the establishment and enforcement of MSHA's regulations.

18.     Defendant MSHA is an agency of the Department of Labor, administers and enforces the Mine Act, and promulgates regulations thereunder, including the POV II Rule.

19.     Plaintiffs have standing to bring this action on behalf of their members. Plaintiffs' members would otherwise have standing to sue in their own right because they are subject to the jurisdiction of the Mine Act and are regulated by MSHA; both Plaintiffs and their members have suffered and will continue to suffer direct harm as a result of the POV II Rule and MSHA's enforcement thereof; and the relief requested in this action will alleviate the harm to Plaintiffs and their members.  Additionally, Plaintiffs' claims and requested relief are germane to their organizational purposes and do not require the participation of any individual member.

**GENERAL ALLEGATIONS**

**A.**    **The Applicable Statutory and Regulatory Framework**

20.    The Mine Act was enacted "to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines . . . . " 30 U.S.C. § 801(c).

21.    The Mine Act authorizes the Secretary and MSHA to promulgate mandatory health or safety standards, as well as other rules and regulations; conduct regular, warrantless inspections of mines; and issue alleged or proposed citations, orders, and penalties for violations of the Mine Act or standards, rules and regulations promulgated pursuant to the Mine Act.

22.    This case concerns the Mine Act's pattern of violations provision ("POV provision"), which reads:

> If an operator has a pattern of violations of mandatory health or safety standards in the coal or other mine which are of such nature as could have significantly and substantially contributed to the cause and effect of coal or other mine health or safety hazards, *he shall be given written notice* that such pattern exists. If, upon any inspection within 90 days after the issuance of such notice, an authorized representative of *the Secretary finds any violation* of a mandatory health or safety standard *which could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard*, the authorized representative shall issue an *order requiring* the operator to cause *all persons in the area affected* by such violation, except those persons referred to in subsection (c), *to be withdrawn* from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

30 U.S.C. § 814(e)(1) (emphasis added).

23.    This provision empowers MSHA to identify certain mines as "pattern violators." Pattern violators are those mines that have a "pattern of violations of mandatory health or safety standards" that "could have significantly and substantially contributed to the cause and effect of

coal or other mine health or safety hazards."  *Id.*  Under established law, such "significant and substantial" ("S&S") violations occur when there exists "a reasonable likelihood" that the cited hazard "will result in an injury" and "a reasonable likelihood that the injury in question will be of a reasonably serious nature."  *Sec'y of Labor (MSHA) v. Cement Division, National Gypsum Co.*, 3 FMSHRC 822, 824 (Rev. Comm'n, 1981).

24.    As described in ¶¶ 38–40, below, MSHA's inspectors regularly inspect mines, using the agency's warrantless inspection authority, and issue citations and orders, including closure orders, which contain allegations of S&S violations.  MSHA issued approximately 118,619 citations and orders in 2013, about 27% of which it claimed were S&S.

25.    The Mine Act requires that MSHA notify operators when they have a pattern of S&S violations, and it then grants MSHA the extraordinary authority to issue penalties and orders to shut down all or part of the mine if an inspection within 90 days reveals any additional S&S violations.  30 U.S.C. § 814(e)(1)–(2).

26.    Once a mine has been declared a pattern violator, the only way for the mine to escape the "pattern" status is to undergo a complete inspection without a single S&S violation resulting.  *Id.* § 814(e)(3).

27.    Mine operators have no mechanism to contest MSHA's pattern identification postings on the MSHA website (and the application of the criteria underlying them), or its announcement via written notice and press release, that an operator is a pattern violator.[1]

---

[1] Dismissing a mine operator's attempt to contest a pattern notice, the Commission held,

> As a preliminary matter, I [the Chief Administrative Law Judge of the FMSHRC] note that on October 30, 2013, Brody notified the Secretary that it was contesting the Pattern of Violations (POV) Notice No. 7219154 issued to Brody. This contest was docketed at the Commission as Docket No. WEVA 2014-81-R. The Commission, however, lacks the necessary jurisdiction to adjudicate Brody's contest of the POV notice. As noted in

28.     The results of being placed on POV status are severe, and the consequences are quick, economically devastating, and lasting, including reporting to the Securities and Exchange Commission ("SEC") and receiving repeated closure orders.  For this reason, the POV sanction has been characterized as "an enforcement tool of last resort."  78 Fed. Reg. 5060.

**B.     The 1990 POV Rule ("POV I")**

29.     In order to implement the Mine Act's POV provisions, Congress authorized the Secretary to promulgate rules "to establish criteria for determining when a pattern of violations of mandatory health or safety standard exists."  30 U.S.C. § 814(e)(4).  MSHA first adopted such rules and criteria in 1990.  *See* Pattern of Violation Final Rule, 55 Fed. Reg. 31128 (July 31, 1990) ("POV I").

30.     Reflecting congressional intent, POV I stressed that the POV sanctions "are intended for use at mines with a record of repeated S&S violations" and are only to be used "when other enforcement provisions of the statute have not been effective in bringing [a] mine into compliance."  *See* 55 Fed. Reg. at 31128 (emphasis added).  POV I recognized that the statutory requirements to terminate a POV sanction impose a significant burden on a mine

---

*Rushton Mining Co*., [t]he Commission is an agency created under the Mine Act with certain defined and limited administrative and adjudicative powers.  11 FMSHRC 759, 764 (May 1989). Under the Mine Act, for example, the Commission and its judges have authority to assess all civil penalties provided in [the] Act. 30 U.S.C. § 820(i). Under the Act and the Commission's Procedural Rules, 29 C.F.R. Part 2700, Commission judges have the authority to adjudicate contests of citations, orders, and penalties; complaints for compensation and of discrimination; and applications for temporary relief. No provision of the Act or the Commission's Procedural Rules, however, grants me the authority to adjudicate the POV notice itself. I therefore DISMISS Docket No. WEVA 2014-81-R.

*Brody Mining*, (Chief ALJ Order, January 30, 2014). 36 FMSHRC ___, slip op. at 4, Docket No. WEVA 2014-81-R (Jan. 30, 2014) (emphasis added). *See* paragraphs 80-85 *infra* regarding the outcome of this case.  *See also Pocahontas Coal v Secretary of Labor*, Docket WEVA 2014-569-R (ALJ August 4, 2014) (dismissing a contest of a pattern notice for lack of Commission jurisdiction).

operator, and it would be extremely difficult for a mine to overcome the POV status by achieving an inspection without any such citations, particularly at large underground mines. *Id.* at 31129.

31. Given the severity of POV sanctions and the difficulty of exiting POV status, in the POV I regulatory scheme MSHA anticipated using 30 U.S.C. § 814(e) pattern sanctions only against mine operators who did not respond "to an escalating series of enforcement actions by the Agency." *Id*.

32. In keeping with constitutional and Mine Act requirements, MSHA adopted POV I "procedures for fair and full notice, including an opportunity for the [operator] to respond to the Agency's initial evaluation" of pattern status. *Id*.

33. Consistent with the Fifth Amendment and the Mine Act's limited grant of authority to base a pattern on "violations," POV I counted only "final citations and orders," which operators had accepted or which an Administrative Law Judge ("ALJ") had approved, following the operator's opportunity to obtain judicial review of individual citations and orders under Commission procedures. *Id*. at 31132. 54 Fed. Reg. 23156, 23157 (May 30, 1989) (Proposed Rule for POV I).

34. POV I also provided a system for MSHA to notify mine operators when they had a "potential" pattern of violations ("PPOV"). 55 Fed. Reg. 31133. Before issuing a mine operator a notice of a pattern, MSHA would issue a PPOV notice, which warned the operator that a potential pattern might exist and enabled the operator to respond and correct any errors in MSHA's data and otherwise address MSHA's concerns before MSHA issued a notice of pattern. *Id*. When it promulgated POV I, MSHA determined that these procedural safeguards were necessary due to the "significance of pattern closure sanctions." *Id*.

8

35.     POV I also included the screening criteria that MSHA would use when reviewing and evaluating mines for patterns.  *Id*. at 31130.  Since the screening criteria were published in the Federal Register in the POV I proposed and final rules, and ultimately codified in the C.F.R., they were the subject of full notice-and-comment rulemaking procedures.  *Id*. at 31130-31131.

36.     MSHA admitted that congressional "committee reports and floor debates in the Mine Act's legislative history make it clear that Congress directed the pattern of violations provisions at the <u>very few</u> mine operators that repeatedly <u>violate</u> the law," and are only to be used when "other enforcement tools fail" to bring a mine into compliance.  *Id*. at 31128 (emphasis added).

**C.      MSHA Inspectors "Over-Write" Citations, Resulting in Large Numbers of Unreliable Allegations that Are Later Reversed, But that the New POV Rule Improperly Uses for POV Identification, Notice, Web Posting and Press Releases.**

37.     MSHA inspectors have broad discretion to issue citations.

38.     The Mine Act requires that MSHA fully inspect each underground mine at least four times each year and each surface mine twice each year.  MSHA performs these complete mine inspections through warrantless, in-person, site entries by its many inspectors.  *See* 30 U.S.C. § 813.  The inspectors observe mine conditions, inspect equipment, review records, and interview personnel for varying numbers of days yearly, depending on mine size, including almost continuous presence at some large mines.

39.     MSHA inspectors issue citations alleging violations if they "believe" violations have occurred.  30 U.S.C. § 814(a).  MSHA inspectors issue citations for allegations ranging from conditions as simple as a missing garbage can lid, *see* 30 C.F.R. § 56.20013, or paperwork mistakes, *see* 30 C.F.R. Part 50, to more serious allegations of "roof" or "ground control" hazards, *see* 30 C.F.R. § 77.1004.

9

40.     Citations issued for violations carry civil monetary penalties up to $220,000.00 (for flagrant violations), generally determined by six factors, including the mine's history of previous violations.  30 U.S.C. § 820.

41.     For civil penalty determinations under the Mine Act, "only assessed violations that have been paid or finally adjudicated, or have become final orders of the Commission [are] included in determining an operator's history."  30 C.F.R. § 100.3(c).

42.     For each citation or order issued for an alleged violation, the inspector decides whether to allege that the cited condition was S&S by checking a box on the citation form (upon finding "a reasonable likelihood" that the cited hazard "will result in an injury" and "a reasonable likelihood that the injury in question will be of a reasonably serious nature"). *Mathies Coal Co*., 6 FMSHRC at 3-4.

43.     Indeed, MSHA admits that its inspectors add S&S charges to approximately one-third of their citations; yet, the S&S allegations are dropped or dismissed in approximately one-third of the citations contested.

44.     Citations and orders alleging violations only become violations or "final orders" when operators exhaust or forego administrative and judicial review rights.  30 U.S.C. § 815, *et seq*.

45.     The first level of review, provided by MSHA regulations, permits an operator to seek an informal conference with MSHA to address a citation's defects; if MSHA agrees to such a meeting, it can vacate or modify the citation.  *See* 30 C.F.R. § 100.6.  However, in recent years, MSHA often has not allowed these meetings.

46.     Alternatively or additionally, an operator can contest an alleged violation (described within a citation) or proposed penalty before the Commission, which has jurisdiction

to review *de novo* – and vacate, modify, or affirm – citations, alleged violations and proposed civil penalties.  *See* 30 U.S.C. § 815(d).

47.    These Commission contests of enforcement proceedings involve pleadings, discovery, and an evidentiary hearing before an ALJ. Expedited proceedings theoretically are available to operators subject to the risk of severe sanctions, including shut-down orders, but often, the proceedings involve delays of weeks or months.  30 U.S.C. §§ 815, 817; 30 C.F.R. § 2700.52; *see also Brody Mining* (Chief ALJ Order, Nov. 3, 2014) Docket Nos. WEVA 2013-370, et al., at p. 16.  ("[T]he process envisioned by the Secretary is a months' (if not years) long process . . . .").

48.    These administrative review procedures regularly prove necessary given the volume of S&S citations inspectors issue, and the troubling number later found meritless.

49.    MSHA conducts about 818,823 hours of inspections per year and issues about 140,000 citations and orders per year.

50.    Since 2006, inspectors alleged that between 29% and 33% of these citations and orders were S&S.

51.    In 2012, for example, MSHA issued 38,100 S&S citations, accounting for 29% of all citations and orders issued that calendar year.  *Mine Safety and Health at a Glance*, *available at* http://www.msha.gov/mshainfo/factsheets/mshafct10.htm (dated June 30, 2013).

52.    Data shows that a shocking number of S&S citations issued are later vacated by MSHA or an ALJ.  In 2011, 70% of all issued S&S citations were subject to formal contest, and a full one-third (33%, more than 11,300) were vacated, dismissed, or modified during the legal proceeding.

53.     These high rates of S&S charges, initially made and later rejected, result from inspector inexperience and well-known pressure to write and "over-write" citations.  *See Marfork Coal Co., Inc.*, Docket No. WEVA 2012-941, 2013 WL 1856612, 4 (March 22, 2013) (ALJ observing that "District 4 has seen two major disasters in recent years and, consequently, the inspectors, many of whom are inexperienced, are under pressure to write citations.  As a result, inspectors are 'over-writing' the citations.").

54.     S&S allegations made by MSHA inspectors are even less reliable than the statistics indicate because mine operators often choose not to contest due to the high and unrecoverable costs of litigation, even if the MSHA enforcement allegations are meritless.

## D.     POV I Was Successful, and Congress Rejected MSHA Authority to Issue New POV Regulations Based on Non-Final Citations.

55.     The POV I rule stood for more than 20 years, during which time mine injury rates and fatalities declined dramatically, as reflected in the MSHA chart below.  *See Mine Safety and Health at a Glance*.  http://www.msha.gov/MSHAINFO/FactSheets/MSHAFCT10.asp

56.     Indeed, prior to 1991, U.S. mines tragically experienced at least 100 fatal injuries per year, and often many more.  *Id*.  This number steadily declined while POV I was in effect, and by 2009 had dropped to an all-time low of 35, which, while still 35 too many, was a remarkable achievement.  *Id*.

57.     Nevertheless, between 2010 and 2011, MSHA took the position that the Mine Act's POV provisions were "broken" and insufficient, and MSHA sought congressional action to expand its authority.  *See H.R. 5663, Miner Safety and Health Act of 2010: Hearing Before the H. Comm. on Education and Labor*, 111th Cong. 13-14 (2010) (testimony of the Hon. Joseph A. Main, Assistant Secretary of Labor, Mine Safety and Health) ("Hearing on H.R. 5663"); *see also*

*Reducing the Growing Backlog of Contested Mine Safety Cases: Hearing Before the H. Comm. on Education and Labor*, 111th Cong., 13 (Feb. 23, 2010).

58.     MSHA sought the power to identify pattern violators based on the allegations (inspector "beliefs") in initial citations (as opposed to final citations that have been accepted by an operator or contested and approved by a judge).  *Id.*

59.     MSHA recognized that its existing Mine Act powers required consideration of only final citations and orders for pattern status, noting that the problem "can be improved only so much through regulation."  *Examining Recent Regulatory and Enforcement Actions of the Mine Safety and Health Administration*: *Hearing Before the Subcomm. on Workforce Protection of the H. Comm. on Education and the Workforce*, 112th Cong. 23 (March 3, 2011).

60.     Congress considered multiple bills to amend the Mine Act and expand MSHA's authority under Section 104(e) so that MSHA could enact a regulation, like the present POV II Rule, that considers non-final S&S citations and orders in POV determinations.

61.     However, Congress ultimately <u>rejected</u> MSHA's request for expanded POV authority. The bills did not become law.  *See* 111th Cong. Rec. 8145 (Dec. 8, 2010) (defeating H.R. 6495, the Robert C. Byrd Mine Safety Protection Act of 2010).

### E.     When Congress Refused to Expand MSHA's Power, MSHA Acted Anyway, Going Far Beyond Its Statutory Grant of Authority.

62.     Less than two months after Congress refused to grant MSHA statutory authority to consider non-final citations in POV determinations, MSHA initiated rulemaking for the present POV II Rule, proposing to grant unto itself authority to use non-final citations, while excluding notice and comment on various critical and substantive aspects of its rule.  *See* 76 Fed. Reg. 5719 (2011).

63.     In the new POV II Rule, MSHA eliminated each and every procedural, statutory, and due process protection included in the original POV I Rule. *Id.* First, MSHA proposed to identify pattern violators based on *non-final* S&S citations and orders. *See id.* at 5721. The POV II Rule thus permits MSHA to declare mines pattern violators, based on an inspector's mere beliefs and allegations, even those pending before a judge or ultimately vacated. *Id.* at 5722. Importantly, the POV II Rule contains <u>no provision</u> that reverses POV status when the S&S allegations (which qualified the operator for POV in the first place) are later modified or dismissed. *Id.*

64.     Second, the POV II Rule eliminates the advance notice PPOV system. Instead of receiving advance warning and opportunity to address a possible forthcoming POV notice with the agency (*e.g.*, correcting inaccurate MSHA computer data), now, MSHA identifies POV mines for the first time on the agency website and via a written notice and/or a press release <u>after</u> they received pattern status. *Id.* This position reversed MSHA's original conclusion that due process protections required operators to receive meaningful opportunities to engage MSHA enforcement personnel before issuing a pattern notice. *See* 55 Fed. Reg. at 31133.

65.     Third, in the POV II Rule, MSHA refused to identify and undertake notice-and-comment rulemaking on its new "screening criteria," which it uses to determine pattern status, even though it adopted the POV I criteria through notice-and-comment rulemaking. 76 Fed. Reg. 5720. MSHA rejected repeated requests by interested parties for rulemaking on the criteria, intentionally avoided subjecting its new POV II criteria to evaluation and notice and comment, and declared for itself the authority to use and revise these criteria unilaterally, without regard to the APA, the Mine Act, or the Constitution. *Id.*

66.     Fourth, contrary to the Mine Act, the POV II Rule mandates that an operator can have a pattern of violations without any pattern at all – based on any random assortment of S&S citations, regardless of whether the citations share in common the same or similar hazard allegations or regulatory standards.  78 Fed. Reg. 5061 (ignoring the statutory word "pattern" and stating that "MSHA believes that limiting the scope of the POV regulation to repeated violations of the same or related standards would unnecessarily hinder" the agency).

67.     Fifth, contrary to the Mine Act, the POV II Rule determines pattern status based on citations issued under Section 104(a) of the Act, even though the Mine Act only authorizes S&S citations under Section 104(d).  *See* 78 Fed. Reg. at 5073 (listing separate criteria for considering "[c]itations for S&S violations" under Section 104(a) and "[c]itations and withdrawal orders under Section 104(d)").

68.     Sixth, under the POV II Rule, MSHA tasked mine operators with knowing whether or not they are approaching MSHA pattern status determination, based on the agency's website postings.  78 Fed. Reg. 5063.  MSHA then declared that in extraordinary circumstances, mine operators could delay a POV notice by implementing an MSHA-approved, detailed and onerous "corrective action plan" that meets MSHA mandates, but mine operators must obtain MSHA approval and implement such a plan before they receive a POV notice.  *Id.*

69.     As with its criteria for evaluation and determining pattern status, MSHA did not subject its corrective action plan approval and success criteria to notice-and-comment rulemaking.   Mine operators were denied meaningful input into these substantive and burdensome mandates that change their rights and duties.   Instead, MSHA mandated management, operational, staffing, and engineering changes to be adopted in these plans through executive fiat, website publication.  *See PATTERN OF VIOLATIONS (POV) PROCEDURES*

15

SUMMARY, *available at* http://www.msha.gov/POV/POVProcedures.pdf (last accessed Dec. 12, 2014) (noting that corrective action programs should address "management changes," frequency of future mine inspections, "additional health and safety staff" to be added, miner training, "modifications or additions to engineering and/or administrative controls"). *See also Pattern of Violations*, *available at* http://www.msha.gov/POV/POVsinglesource.asp (last accessed Dec. 12, 2014).

70. The agency admits that its plan approval mandates will have significant impacts on the industry. "MSHA identified 313 mines that either met all of the initial screening criteria or all but one of the initial screening criteria. MSHA believes that most mine operators in this situation will submit and implement corrective action programs. MSHA believes that almost 90 percent (or 275) of these mines will submit corrective action programs in the first year under the final rule." 78 F.R. at 5068.

71. These MSHA pattern qualification criteria, and approved corrective action plan criteria, are not procedural rules, interpretations, nor policy statements, and thus not exempt from notice-and-comment rulemaking. Yet, the POV II Rule relies and depends upon them. Instead, the provisions are mandatory regulations, with substantive impacts that change the rights and duties of the regulated parties and should have been subjected to APA rulemaking.

72. Mine operators will be forced to expend significant time and resources seeking MSHA approval of, and then implementing, the arbitrary and capricious mandates for the compliance plans, in hopes of avoiding a harmful POV website posting, notice or press release.

73. The MSHA criteria for approving or denying approval for corrective action plans, and for deciding that such plans have succeeded, are not subject to judicial review, unless they are reviewed and rejected in this case.

16

74.     Similarly, mine operators will be subject to the severe harm and risks of pattern violator identification on the MSHA website, and through MSHA notices and press releases, based on the plan criteria (specifically, a failure to meet those criteria, resulting in no plan to mitigate pattern status) *and* the MSHA pattern evaluation criteria, both of which MSHA adopted through executive fiat, without APA mandated rulemaking.

75.     In the POV II rulemaking, commenters overwhelmingly objected to the POV II Rule because it violated operators' due process rights, as well as Mine Act and APA provisions (*e.g.*, use of non-final citations, elimination of a meaningful right to contest an alleged violation, failure to use notice-and-comment rulemaking for the website-adopted POV II screening criteria and for the criteria for approval and success of corrective action plans).

76.     Commenters noted that without proper notice-and-comment rulemaking on the criteria that qualify or exempt a mine for POV identification and application, MSHA can change criteria and/or adopt other criteria without a sound and tested rationale, at any time, repeatedly changing the rights and duties of the regulated parties without rulemaking.

77.     Despite the comments, MSHA promulgated the POV II Rule on January 23, 2013.

78.     Under the POV II Rule, the procedural safeguards afforded by POV I no longer exist, MSHA singlehandedly expanded its own authority to adopt provisions which Congress rejected and which run counter to the Mine Act, and mine operators are subject to significant new mandates, duties and enforcement risks, imposed without APA rulemaking, based on assorted allegations and beliefs of mine inspectors even if those allegations are later overturned by a court.

79.     On November 3, 2014, an FMSHRC ALJ dismissed POV closure orders issued to mine operator Brody Mining, ruling that MSHA failed to meet procedural due process

17

requirements by not identifying the specific criteria that constituted a pattern of violations even after the criteria were utilized. *Brody Mining,* Dockets Nos. WEVA 2013-370, et al. In doing so, the ALJ likened the Secretary's POV process to an "unfair card game," where "the rules were announced only after the game had been played." *Id*. at 9. As the ALJ noted, "[s]uch rules are antithetical to procedural due process." *Id*. at 10. The ALJ acknowledged the Secretary's interest in utilizing the POV provision, but cautioned that "it is more important that the process be fair, and consistent with the principles of procedural due process." *Id*. at 19.

80.    The Nov 3, 2014 ALJ decision in *Brody Mining* presents a clear example of why the POV II Rule should be declared unlawful and vacated by this Court. It took more than one year from the date that Brody unsuccessfully sought to obtain review of its POV notice to stop the illicit and ongoing issuance of POV closure orders. *See fn 1, supra*.

81.    While an ALJ ultimately dismissed the POV orders issued to Brody, before that happened, and notwithstanding Brody's immediate attempts to obtain review, MSHA had already issued at least 28 of them.

82.    The Nov 3, 2014 ALJ decision illustrates the dangers of the POV II Rule's use of non-final allegations in a mine-specific case, under POV criteria that were not defined before in rulemaking or otherwise, resulting in multiple, individual, mine-specific closure orders. The Brody withdrawal orders, which repeatedly closed or adversely impacted Brody's mining operations, were issued while the individual S&S allegations were being contested.

83.    The Brody withdrawal orders were issued using POV criteria that did not undergo rulemaking and were constantly changing, resulting in the ALJ comparing them to a "card game" for which "the rules were announced after the game had been played."

84.     The *Brody Mining* decision, however, resolved the issues only as between Brody and the Defendants for the specific closure orders and citations at issue in that case.    The decision does not spare other mine operators (operating some 14,600 mines nationwide) from due process, APA, and Mine Act infractions that infect and invalidate the POV II Rule, resulting in repeated misuse and abuse of the agency's closure order authority that will continue, unless addressed in this case.  Only an order from this Court invalidating the POV rule will provide an adequate remedy.

## COUNT I
### Violations of the Administrative Procedure Act
### (Action without Observance of Procedure)

85.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 84 of this Complaint, as if fully set forth herein.

86.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

87.     The APA further empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

88.     Pursuant to the APA, any "rule" promulgated by an agency must be published in accordance with notice-and-comment procedures. 5 U.S.C. § 553.  An agency's failure to comply with notice-and-comment procedures is grounds for invalidating the rule.

89.     MSHA declined to include in the proposed and final POV II Rule the criteria for a POV determination and the criteria for a corrective action plan, including the mandates and duties a corrective action plan must meet for its approval, the elements that such programs must

19

contain, and the results that such programs must achieve in order to delay or preclude a POV notice, website posting, press release, or implementation. Under the Mine Act and the APA, MSHA was required to publish the criteria that qualify a mine for POV status, the criteria used to evaluate and approve a corrective action plan, and the results thereof, in the *Federal Register* and submit those rules to the rigors of notice-and-comment rulemaking.

90.     In addition, the POV II Rule implements further APA failures by adopting a system that requires mine operators to accept massive new regulatory obligations and duties as part of corrective action plans, all without notice-and-comment rulemaking.

91.     Instead of subjecting POV criteria and corrective action plan criteria to notice-and-comment procedures, MSHA claimed for itself the authority to issue – and change – them unilaterally, without notice, and without input from the regulated community, simply by posting them on its website and/or implementing them as the agency determines from time to time.

92.     Without proper notice-and-comment rulemaking on the criteria that qualify or disqualify a mine for POV status, operators lack notice of the rules that would or could apply to them and were prohibited from meaningful analysis and input, as required by the APA and Mine Act.

93.     Defendants were obligated to comply with the APA's notice-and-comment procedure in promulgating the POV II Rule, and no good cause exists for their decision not to comply with the APA.

94.     The conduct of Defendants described above constitutes unlawful action that has caused Plaintiffs and their member companies to suffer legal wrong reviewable by this Court under the APA, 5 U.S.C. § 706.

## COUNT II
### Violations of the Administrative Procedure Act
### (Action in Excess of Statutory Authority/*Ultra Vires*)

95.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 94 of this Complaint, as if fully set forth herein.

96.     The APA empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

97.     The POV II Rule exceeds the Secretary's authority under the Mine Act because it allows MSHA to issue POV website postings, notices, press releases and sanctions (including mine shut-downs) based on inspectors' mere "belief(s)" regarding S&S allegations.

98.     The Mine Act, by contrast, unambiguously requires the Secretary, when identifying pattern violators, to use: (1) an operator's enforcement record based on final "violations," as that term is understood through its ordinary meaning, Mine Act terminology, prior POV I application, and MSHA's continuing 30 CFR Part 100 penalty rule application; and (2) an actual "pattern" among Section 104(d) S&S violations, not merely a random assortment of disconnected beliefs, alleging all types of hazards and regulations violated.

99.     The POV II Rule bypasses these statutorily-mandated requirements and impermissibly extends MSHA's authority far beyond what Congress authorized.

100.    Defendants' promulgation of the POV II Rule is therefore *ultra vires* and must be invalidated.  The conduct of Defendants as described above constitutes unlawful action that has caused Plaintiffs to suffer legal wrong reviewable by this Court under the APA, 5 U.S.C. § 706.

**COUNT III**
**Violations of the Administrative Procedure Act**
**(Action that is Arbitrary, Capricious, an Abuse of Discretion,**
**or Otherwise Not in Accordance with Law)**

101.    Plaintiffs re-allege and incorporate by reference the allegations contained in

Paragraphs 1 through 100 of this Complaint, as if fully set forth herein.

102.    The APA empowers the court to "hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

103.    The POV II Rule is the result of arbitrary and capricious rulemaking that is not

based on reasoned analysis, contrary to the requirements of the APA.

104.    First, MSHA ignored overwhelming rulemaking record evidence, showing the

alarming rate at which inspectors erroneously allege S&S violations.  MSHA selected non-final

citations as the foundation for its POV II Rule, even in the face of evidence demonstrating that

27–33% of contested S&S citations are later vacated or modified to "non-S&S."  In failing to

adequately consider that evidence, MSHA's rulemaking ran "counter to the evidence before the

agency" and is invalid.

105.    Second, the POV II Rule is arbitrary and capricious for removing all of the

successful incentives and opportunities produced by the prior regulation to improve safety, in

direct violation of the Mine Act. By eliminating the PPOV notification system, for instance,

MSHA violated Section 101(a)(9) of the Mine Act, 30 U.S.C. § 811(a)(9), by reducing the safety

improvements it admits were produced by POV I. Following POV I, the number of fatal injuries

in U.S. mines dropped from at least 100 per year (1991) to an all-time low of 35 per year (2009).

Despite a clear record of safety improvements under the old rule, MSHA replaced these

provisions with a rule centered entirely on sanctions, casting a net so wide as to ensnare

operators who have no actual pattern of violations at all.  It does all of this without any record evidence or justification that the POV II Rule can or will improve safety.

106.    Third, MSHA's feasibility analysis underlying the POV II Rule is conclusory, fails to account for significant facts and costs, and does not provide a reasoned basis for the regulation.  MSHA summarily concluded that the POV II Rule is technically feasible while ignoring extensive record evidence of MSHA's high rate of error and reversal in issuing S&S citations, upon which the POV II Rule relies.  MSHA also concluded that the Rule is economically feasible, ignoring the multi-million dollar implications of erroneously closing a mine or the expense for operators of complying with new, massive "corrective action program" requirements MSHA will impose.  MSHA incorrectly claims that the POV II Rule meets (or is exempt from) the requirements of several significant rulemaking mandates regarding economic and technical feasibility and impacts on small business and energy.  By ignoring record evidence and skipping any meaningful analysis, MSHA simply failed to meet these rulemaking requirements and conduct reasoned decision-making.

107.    Defendants cannot articulate a rational connection between the facts found and the conclusions made in the POV II Rule.  Defendants failed to consider important aspects of the problem and offered an explanation for the POV II Rule that runs counter to the evidence.

108.    Additionally, as explained above, the POV II Rule exceeds the Secretary's authority under the Mine Act.

109.    Defendants' promulgation of the POV II Rule is, therefore, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

110.     Defendants' conduct, described above, constitutes unlawful action that has caused Plaintiffs and their member companies to suffer legal wrong reviewable by this Court under the APA, 5 U.S.C. § 706.

**COUNT IV**
**Deprivation of Due Process Of Law**

111.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 110 of this Complaint, as if fully set forth herein.

112.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."

113.     Plaintiffs and their member companies have constitutionally-protected interests, that include the right to operate one's business, an operator's ownership interest in a mine, the property interest in its revenues, and the dues and fees paid to Plaintiff associations from revenues of the mines they represent, all of which constitute significant property rights subject to due process protections.

114.     The POV II Rule violates Plaintiffs' constitutionally-protected rights by not assuring due process of law.

115.     The POV II Rule provides Plaintiffs and their members with no pre-deprivation process to protect their property interests from the improper imposition of the most severe sanction contained in the Mine Act, and the improper imposition of newly mandated duties in POV corrective action plans, requiring approval by MSHA, but adopted without rulemaking.  In contrast, POV I offered multiple pre-deprivation procedural protections.  Among the POV I pre-deprivation procedural protections eliminated by POV II were: adoption of identification and corrective action criteria by notice-and-comment rulemaking; review of citations used for POV

selection by an ALJ, within a statutorily-mandated review process; and, participation in PPOV programs with MSHA that corrected errors and improved safety.

116. The new POV II Rule deprives Plaintiffs of due process of law because it uses a retroactive application of POV selection criteria that did not undergo notice-and-comment rulemaking, based on allegations – mere inspector "beliefs" – obtained through warrantless inspections, contained in citations subject to later judicial review, regardless of their proven high error rate or even the actual outcome of court review.

117. The POV II Rule also deprives Plaintiffs of due process of law because it eliminates the PPOV system, which provided an opportunity to correct MSHA errors and improve safety. Instead, without notice-and-comment rulemaking, it adopts mandates for MSHA-approved, compliance plans, which impose burdensome, arbitrary and capricious engineering, management, staff and operational changes upon mines that seek to avoid POV status.

118. The POV II Rule also fails to provide any pre-deprivation procedures and relief from MSHA POV website postings, notices of POV status, or press releases that trigger mandated public securities law filings that financially impact Plaintiff and their member companies. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Jul. 21, 2010, § 1503, 15 U.S.C. § 78m-2(b) (requiring operators that are public companies to report to investors in their quarterly and annual SEC reports the quantity of S&S citations and unwarrantable failure orders received during the reporting period, and to file a Form 8-K with the SEC if a pattern of violations notice is received).

119. Together, the changes to the POV II Rule removed all of the constitutionally-sound methods to prevent proven government errors leading to improper POV website postings,

notices, press releases, and closure sanctions, all of which harm Plaintiffs, while imposing new mandates that change the duties of the regulated parties, all without rulemaking, and all amounting to a deprivation of property without due process of law.

**COUNT V**
**Declaratory Judgment**

120.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 119 of this Complaint, as if fully set forth herein.

121.     The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare Plaintiffs' legal rights when an actual controversy exists.

122.     As stated above, Plaintiffs and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 29 U.S.C. § 2201.

123.     Defendants failed to comply with the APA's notice-and-comment procedure in promulgating the POV II Rule.

124.     Defendants' promulgation of the POV II Rule is *ultra vires* to the Mine Act.

125.     Defendants' promulgation of the POV II Rule and revocation of the POV I rule are arbitrary, capricious, an abuse of abuse of discretion, or otherwise not in accordance with law.

126.     The POV II Rule violates Plaintiffs' constitutionally-protected rights by not assuring due process of law.

127.     For the reasons stated above, Plaintiffs respectfully ask this Court to declare that the POV II Rule and the revocation and/or amendment of the POV I rule violate the APA, the Mine Act, and Plaintiffs' Fifth Amendment Due Process rights, and, therefore, respectfully request that this Court invalidate the POV II Rule.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

A.      Declare pursuant to 5 U.S.C. § 706(2)(D) that the POV II Rule is unlawful and in violation of the APA because it was promulgated without observance of procedure required by law, and vacate the POV II Rule;

B.      Declare pursuant to 5 U.S.C. § 706(2)(C) that the POV II Rule is unlawful and in violation of the APA because it exceeds the Secretary's authority under the Mine Act, and vacate the POV II Rule;

C.      Declare pursuant to 5 U.S.C. § 706(2)(A) that the POV II Rule is unlawful and in violation of the APA as a rule that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and vacate the POV II Rule;

D.      Declare that the POV II Rule violates Plaintiffs' constitutionally-protected rights by not assuring due process of law as required by the Fifth Amendment; and

E.      Grant such other and further relief as this Court deems equitable, just, and proper.

Respectfully submitted,

/s/ *Scott A. Carroll*
Scott A. Carroll (0062115)
Kimberly B. Bakota (0082571)
JACKSON LEWIS P.C.
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
Telephone:  (513) 898-0050
Facsimile:  (513) 898-0051
Email: scott.carroll@jacksonlewis.com
Email: kimberly.bakota@jacksonlewis.com

*Trial Attorneys for Plaintiffs*

*Motions for Pro Hac Vice Admission to be Filed*:

Henry Chajet
Avi Meyerstein
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Facsimile: (703) 483-8301
Email: henry.chajet@jacksonlewis.com
Email: avi.meyerstein@jacksonlewis.com

Mark Savit
JACKSON LEWIS P.C.
950 17th Street,
Suite 2600
Denver, CO 80202
Telephone: (303) 892-0404
Facsimile: (303) 892-5575
Email: mark.savit@jacksonlewis.com

4852-9821-2895, v. 20